IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER JARBOE, *et al.*, on behalf of themselves and all others similarly situated,

    *Plaintiff*,

v.

MARYLAND DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES (DPSCS), *et al.,*

    *Defendants*.

Civil Action No. ELH-12-572

## MEMORANDUM

This Memorandum is prompted by a submission from Bruce Koenig docketed on September 19, 2017, titled "Petitioner's Motion For A Hearing As To The Matter Of Petitioner's Standing To Seek Enforcement Of Compliance With Certain Provisions Of The Jarboe Settlement Agreement . . . ." ECF 113 ("Motion"). Koenig, a Maryland prisoner, asks the Court, *inter alia*, to reopen *Jarboe v. Maryland Dep't of Pub. Safety and Corr. Servs., et al.*, ELH-12-572, so that he may "proceed independently and not [as] a party bound by the provisions of the Jarboe Settlement Agreement . . . ." ECF 113 at 4.

No hearing is necessary to resolve the Motion. Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

*Jarboe*, ELH-12-572, was a putative class action brought by five deaf or hard-of-hearing State prison inmates. ECF 1. They alleged violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12131, *et seq.* (Count I); the Rehabilitation Act, 29 U.S.C. §§ 794, *et seq.* (Count II); and deprivation of rights guaranteed by the First Amendment, filed pursuant to 42 U.S.C. § 1983 (Count III). *See* ECF 1, ¶¶ 29-38.

The five named plaintiffs ("Named Plaintiffs") were Christopher Jarboe, Carroll Connelly, Vander Davis, Gary Denmark, and Garfield Redd. They sued six state entities and six individual defendants who were the principal officers for those entities. The defendants consisted of two groups, denominated as the "Correctional Defendants"[1] and the "DLLR Defendants."[2]

In particular, the Named Plaintiffs sought to enjoin defendants from "refusing to provide the proper interpretive services, [telecommunications devices for the deaf ('TDDs')], videophones and other hearing devices" that plaintiffs maintained were "required for deaf and hard of hearing inmates" in order "to fully participate in the programs offered by the federally funded [state] prison system" and "to fully participate in and benefit from the programs offered by [the defendant] public entities." ECF 1 at 37-38. They also sought to represent "all deaf or hard of hearing inmates who currently are or will in the future be in the custody or supervision of" the Maryland Department of Public Safety and Correctional Services ("DPSCS" or the

---

[1] The Correctional Defendants consisted of the Maryland Department of Public Safety and Correctional Services ("DPSCS"), which is the Maryland State agency responsible for the operation of prisons and pre-release centers; the Department's then Secretary, Gary D. Maynard; the Maryland Division of Correction ("DOC"), which is the division of DPSCS responsible for operation of the state prison system; J. Michael Stouffer, then the Commissioner of DOC; the Maryland Correctional Institute – Jessup ("MCI-J"), a medium-security correctional institute located in Jessup, Maryland, that allegedly housed most deaf and hard of hearing DPSCS inmates; Dayena Corcoran, then the Warden of MCI-J; Western Correctional Institution ("WCI"), a maximum-security correctional institution located in Cumberland, Maryland, which allegedly housed some deaf and hard-of-hearing DPSCS inmates, including those who rely on wheelchairs or other mobility devices; J. Philip Morgan, then the Warden of WCI; Maryland Correctional Enterprises ("MCE"), the division of DPSCS responsible for training and employing inmates who perform vocational services in business units in the State prison system; and Stephen M. Shiloh, then the Chief Executive Officer of MCE. *See* ECF 49 at 2-3.

[2] The "DLLR Defendants" were the Maryland Department of Labor, Licensing, and Regulation ("DLLR"), Division of Workforce Development and Adult Learning (Correctional Education) ("DWDAL"), which is the Maryland agency responsible for providing educational programs to DPSCS inmates; and Paulette Francois, then the Assistant Secretary for DWDAL. *See* ECF 49 at 3-4.

"Department"). ECF 1, ¶ 14.

On April 15, 2013, I referred the case to Magistrate Judge Stephanie Gallagher for a settlement conference. ECF 55. Settlement Conferences were held on September 16, 2013; December 2, 2013; May 28, 2014; and June 10, 2014. *See* Docket. On February 18, 2015, the parties informed the Court that they had "reached a settlement in principle among counsel" and "required an opportunity to obtain the necessary client signatures" from the Named Plaintiffs. ECF 89, ¶ 1. A copy of the Settlement Agreement was not filed with this Court. *See* Docket. Nor was a class ever certified.

On February 20, 2015, I dismissed the case pursuant to Local Rule 111, without prejudice to the right of any party to move for good cause within 90 days to reopen the action. ECF 94. No such motion was ever filed. *See* Docket.

Thereafter, the Clerk of the Court received a letter from Mr. Koenig dated October 26, 2015, docketed on November 4, 2015. ECF 96. Mr. Koenig stated that he had "finally . . . been assigned to the 'Deaf Tier' at MCI-J" (*id.* at 1), had recently read the "Jarboe Settlement Agreement", and believed he was "similarly situated" to the Named Plaintiffs in *Jarboe*. *Id.* at 2. He also asked the Court to order former plaintiffs' counsel to provide him with "copies of their <u>entire</u> file from this case . . . . [,] a copy of the entire Docket for the case, and the names and current addresses of all of the Attorneys who participated in the representation of the Class." *Id.* at 3 (emphasis in original).

Koenig filed a "Motion For Inclusion Of Similarly Situated Party Plaintiff" ("Motion for Inclusion"), which was received by the Clerk on May 4, 2016, and docketed on May 9, 2016. ECF 97-1. On May 9, 2016, the Court returned the pleading because the *Jarboe* case was closed. ECF 97.

The Court subsequently received a motion from Koenig and Frankie McCoy on August 16, 2016, titled "Movants' Motion To Reopen Pursuant to FRCP 19(1)(A), (B)(i) and (ii); Lack Of Notice; And Fraud By Counsel For The Parties" ("Motion to Reopen"). ECF 98-1. It was returned because the case was closed and the movants were not parties to the case. ECF 98. Mr. Koenig subsequently filed a notice of appeal, docketed at ECF 99.

In an unpublished per curiam opinion dated July 24, 2017, the Court of Appeals for the Fourth Circuit dismissed the appeal for lack of jurisdiction, concluding that the appeal was not timely. ECF 108. The Court of Appeals noted: "Parties are accorded 30 days after the entry of the district court's final judgment or order to note an appeal, Fed. R. App. P. 4(a)(1)(A), unless the district court extends the appeal period under Fed. R. App. P. 4(a)(5), or reopens the appeal period under Fed. R. App. P. 4(a)(6)." *Id.* at 5. Because my decision was entered on the docket on August 16, 2016, and the Notice of Appeal was not filed until January 24, 2017, the Court determined that Koenig "failed to file a timely notice of appeal or to obtain an extension or reopening of the appeal period." *Id.* The mandate issued on August 15, 2017. ECF 109.

On August 8, 2017, the Clerk received a letter from Koenig requesting a hearing. It was docketed on August 15, 2017. ECF 110. Mr. Koenig appears to allege "fraud perpetrated by the DPSCS and the MDCC." *Id.* at 1. A letter of July 30, 2017, from Koenig to the "Inmate ADA Coordinator" of DPCS was attached. *Id.* at 2. Mr. Koenig stated that documents relating to his "inability to hear" had not been placed in his "inmate base file." *Id.*

The Clerk docketed Koenig's "Motion For Documents At Government Expense" ("Motion for Documents") on August 18, 2017. ECF 111. In the Motion for Documents, Koenig sought documents related to the *Jarboe* case, explaining that he intended to prepare his "response in oppotion [sic] to the defendants' motion to dismiss, or in the alternative, motion for

summary judgment." *Id.* I assume he was referring to defendants' Motion to Dismiss (ECF 29), filed in *Jarboe* on May 8, 2012. That motion was denied on March 13, 2013. ECF 49. And, as noted, the entire case was dismissed on February 20, 2015. ECF 94. On August 18, 2017, I responded to the Motion for Documents, explaining to Koenig that the case was dismissed (ECF 94) "and it does not appear that you were a party to that action." ECF 112.

On September 12, 2017, the Clerk received correspondence from Koenig, docketed September 19, 2017 (ECF 113), asking the Court to reopen the *Jarboe* case so that Koenig may "proceed independently and not [as] a party bound by the provisions of the Jarboe Settlement Agreement." *Id.* at 4. There is no basis for the requested relief. As I stated in my letter to Mr. Koenig of August 18, 2017 (ECF 112), Koenig was not a party to the *Jarboe* case. I also said, *id.*: "[U]pon receipt of correspondence from you, I directed the Clerk to send to you a complaint form for claims under 42 U.S.C. § 1983. Attached hereto is another copy of that form."

If Mr. Jarboe would like to seek relief in this Court, he may initiate his own lawsuit. In other words, relief is not available to Koenig in relation to the *Jarboe* case. To seek relief in this Court, Koenig may use the forms that were previously sent to him. For his convenience, the Court will direct the Clerk to send another civil rights packet form to Koenig. And, the Clerk will be directed to send a copy of this Memorandum and Order to Mr. Koenig.

For the reasons stated above, ECF 113 is DENIED.

Date: September 27, 2017                    /s/
                                            Ellen L. Hollander
                                            United States District Judge\